UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                     CASE NO. 8:06-CV-996-T-MAP

WALTER F. GILL,

    Defendant.
_____/

**ORDER**

    The United States filed this action to reduce to a judgment more than $160,000 in federal income tax assessments against the Defendant for the years 1990 through 1993. 26 U.S.C. §§ 6621, 6622. At this juncture, both parties filed motions for summary judgment. Although Defendant claims the government is equitably estopped from collecting the taxes, and alternatively asks that the Court abate the government's interest claim, he does not dispute the government's computation of his tax debts. After considering the summary judgment record, I grant the government's motion and deny Defendant's motion for the reasons set forth below.[1]

    *A. Standard of Review*

    Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence

---

[1] The parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (doc. 11).

of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.*

   *B. Background*

The material facts are not in dispute. Defendant, a self-employed liquidation expert, failed to pay his requisite income taxes for 1985, 1986, and 1989 through 1993 (Gill aff., ¶ 2). In March 1995, he petitioned for Chapter 11 bankruptcy relief. That culminated in a September 4, 1996, final judgment discharging his tax liabilities for 1985, 1986, and 1989, but not those from 1990 through 1993. *See* doc. 16-3, p.5 (order dated April 3, 2006, Case No. 8:95-bk-2672).[2] The Defendant timely paid per the confirmation plan and assumed he had fully satisfied his tax liabilities. Unfortunately, it seems that both sides misinterpreted the bankruptcy court's final judgment. The Defendant contends he operated under the assumption this order resolved all his tax issues, even as to his postpetition interest (or "gap" interest) charges for his 1990 through 1993 liabilities. The IRS clearly misconstrued the ruling since it applied the Defendant's payments to his discharged tax

---

   [2] The bankruptcy judge concluded the Defendant's 1990 tax liabilities were not discharged pursuant to § 1141(d) of the Bankruptcy Code. As for the 1991 through 1993 tax years, he determined those obligations were nondischargeable because the Defendant had not paid the postpetition interest on the unsecured claims per the terms of the confirmed Chapter 11 plan. *See* doc. 16-3 at p. 16. As the government asserts, that ruling precludes the Defendant from arguing otherwise. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."). All four elements for issue preclusion are present here: (1) the issue at stake must be identical to the one decided in the prior action; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the earlier decision; and (4) the standard of proof in the current action must not be significantly more stringent than the standard in the prior action.

liabilities (1985, 1986, and 1989). That error prompted the Defendant to seek relief again in the bankruptcy court. After a hearing on the matter, the bankruptcy judge directed the IRS to comply with its final judgment. Consequently, the IRS reapplied those payments to the Defendant's 1990s nondischargeable debts. *See* adversary proceeding number 01-438, hearing held January 28, 2002 (doc. 19-11), Order dated March 18, 2002, (doc. 19-12).

Several years after his last payment under the plan, a revenue officer surprised the Defendant at home claiming he still owed tax liabilities. Accordingly, on January 21, 2005, nine years after his Chapter 11 judgment, the IRS issued a notice of levy seeking to collect unpaid taxes totaling $108,154.08.[3] Believing he had satisfied his tax obligations, the Defendant returned to bankruptcy court asking for sanctions against the IRS claiming a violation of the discharge injunction. *See* 11 U.S.C. §524. The bankruptcy judge disagreed finding the bankruptcy action had not discharged his 1990s liabilities.[4] *See* note 2.

It is the amount flowing from this liability that the government now seeks to reduce to judgment. The Defendant, notably, does not challenge the government's computation; instead, he argues that had he been aware of the IRS's outstanding claims, he would have promptly addressed his alleged obligations to avoid accumulating interest. In short, he asserts the government should be equitably estopped from obtaining a judgment; alternatively, he maintains the IRS should abate

---

[3] The per tax year breakdown is: $31,491.45 for 1990, $27,700.09 for 1991, $8,015.24 for 1992, and $40,947.30 for 1993. This amount has increased with interest.

[4] At issue was "whether the IRS violated the discharge injunction by issuing a Notice of Levy in which it seeks to collect tax liabilities arising from the 1990, 1991, 1992, and 1993 tax years." Chief Bankruptcy Judge Paul M. Glenn entered an order on April 3, 2006, concluding that "the taxes that the IRS seeks to collect were not discharged or satisfied in the Debtor's Chapter 11 case. Consequently, the Court determines that the IRS did not violate the discharge injunction by issuing the Notice of Levy." *See* Order, doc. 16-2, p.7.

its interest assessment per 26 U.S.C. §6404(e)(1).

   *C. Discussion*

As preliminary matter, no one disputes the government's action is timely, at least when applying the applicable statute of limitations for collection, which is ten years after the tax assessment. 26 U.S.C. §6502(a)(1). While more than ten years have passed, certain events can toll the time, such as the pendency of the Defendant's bankruptcy case plus an additional six months for collection. *See* 26 U.S.C. §6503(h)(1). Thus, the bankruptcy litigation added 532 days ( from the bankrupty filing on March 22, 1995, through his final Chapter 11 confirmation on September 4, 1996). The six months period for collections took the limitations date to June 11, 2006, making this action timely (complaint filed on May 26, 2006).

   *1. estoppel*

"Estoppel is an equitable doctrine invoked to avoid injustice in particular cases." *Heckler v. Cmty. Health Serv. of Crawford*, 467 U.S. 51, 59 (1984). Its traditional elements are: (1) words, acts, conduct, or acquiescence that induces reliance; (2) wilfulness or negligence with regard to the acts, conduct or acquiescence; and (3) detrimental reliance. *Savoury v. U.S. Atty. Gen.,* 449 F.3d 1307, 1319 (11th Cir. 2006). But its application to the government, assuming it is applicable at all, requires more. *Id.* at 1318 (noting after reviewing Supreme Court cases "that it is far from clear that the doctrine of equitable estoppel may even be applied against a government agency" and underscoring "that the Supreme Court has reversed every finding of estoppel against the government it has reviewed"). The reason for this reluctance is plain: "[w]hen the Government is unable to enforce the law because of the conduct of its agents has given rise to an estoppel, the interest of citizenry as a whole in obedience to the rule of law is undermined." *Crawford,* 467 U.S. 60. Thus,

while circumstances might exist for its application against the government (a proposition *Crawford* recognized but refused to refine), its proponent, at a minimum, would have to meet its traditional test plus show the government engaged in some sort of "affirmative misconduct." *Savoury,* 449 F.3d at 1319. This means the government must do more than act negligently or simply fail to act, a base level required already under the traditional test. *Id.* Irrespective, this traditional-plus test places a "heavy" burden on the doctrine's advocate. *Crawford,* 467 U.S. 60. *See also United States v. Qurashi*, 2004 WL 1771071 (M.D. Fla. 2004) (estoppel should be applied against the IRS with "the utmost caution and restraint").

Considering this high hurdle, it is questionable whether the Defendant even satisfies the lower, traditional equitable estoppel elements. For example, he argues only that the government-issued schedule for his Chapter 11 payments led him to believe that by abiding by the schedule *all* of his tax liabilities would be discharged. The schedule itself, however, does not suggest this conclusion, and the facts show that the government did not neglect its efforts to collect the amounts not covered by the bankruptcy case or mislead Defendant into believing it would do so. In fact, they show that the IRS tried to collect Defendant's outstanding liabilities once he had completed his Chapter 11 plan payments, including a field visit after entry of the final judgment. At best, the Defendant essentially makes a laches argument – government inaction increased the size of his debt or had I known about the debt I would have promptly paid it thereby limiting my exposure to mounting interest. This type of argument, however, suffers from the same fatal flaws as his equitable estoppel one. *Savoury,* 449 F.3d 1320 (laches cannot be asserted against the United States in its sovereign capacity to enforce a public right or to protect the public interest).

*2. abatement*

Applying a similar equitable argument but with different legal underpinnings, the Defendant urges the Court to strike the accrued interest, which by now has mushroomed his initial unpaid tax assessment of $37,395.43 to $160,742.43. Faced with this quadrupled increase, he points to the abatement provisions of the Internal Revenue Code (26 U.S.C. § 6404(e)(1)), a provision that allows the Treasury Secretary to abate the assessment of interest on "any deficiency attributable in whole or in part to any unreasonable error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial or managerial act …" Recently, however, the Supreme Court held that § 6404(h) vests the Tax Court as exclusive forum to review the Secretary's refusal to abate an interest claim. *Hinck v. United States*, __ U.S. __, 127 S.Ct. 2011, 2012-13 (2007). Consequently, this Court is without authority to review the Defendant's abatement argument.

*C. Conclusion*

For the reasons stated, it is

ORDERED:

1. The government's motion for summary judgment (doc. 16) is GRANTED.

2. The Defendant's motion for summary judgment (doc. 19) is DENIED.

3. The Clerk of Court is directed to enter judgment for the government in the amount of $160,742.73 plus interest from August 31, 2006, at the variable underpayment rate set forth in the Internal Revenue Code compounded daily (26 U.S.C. §§ 6621, 6622; 28 U.S.C. § 1961(c)(1)), and

close the case.

IT IS SO ORDERED at Tampa, Florida on this 9th day of August, 2007.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE